IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN ALTERNATIVE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 05-0404-BH-C |
| CHOCTAW COUNTY E-911 ) | |
| COMMUNICATION DISTRICT, et al., ) | |
| ) | |
| Defendants. ) | |

**FINDINGS OF FACT; CONCLUSIONS OF LAW
AND ORDER**

This declaratory judgment action came on for a bench trial before the Court on November 15, 2006. The action involves a Commercial General Liability Insurance Policy issued by the plaintiff, American Alternative Insurance Company ("AAIC"), to the Choctaw County E-911 Communication District "the District"), a defendant herein, for the September 1, 1998 through September 1, 2000 period. The dispute specifically involves AAIC's obligation to defend and indemnify the District under the aforementioned policy with respect to an underlying state court class action lawsuit filed on March 13, 2000 ("the Turner lawsuit"). Upon consideration of all the evidence presented at trial, the arguments of counsel, and all other pertinent portions of the record, the Court concludes that judgment is due to be entered in favor of the defendant.

## FINDINGS OF FACT

The Court finds the following facts to be undisputed or uncontradicted in this action:

1.   Alabama Code §11-98-5(a)(1) ("the Statute") authorizes the collection of telephone service charges in order to establish emergency telephone service.  The Statute provides as follows:

> § 11-98-5.  Service charges
>
> (a)(1)  The board of commissioners of the district may, when so authorized by a vote of a majority of the persons voting within the district, in accordance with law, levy an emergency telephone service charge in an amount not to exceed five percent of the maximum tariff rate charged by any service supplier in the district, except that in counties with populations of less than 25,000 as determined by the most recent population census, the board of commissioners may, when so authorized by a vote of a majority of the persons voting within the district, in accordance with law, levy an emergency telephone service charge in an amount not to exceed two dollars ($2).  The governing body of the municipality or county may, upon its own initiative, call the special election.  Any service charge shall have uniform application and shall be imposed throughout the entire district, to the greatest extent possible, in conformity with availability of such service in any area of the district.  The district shall have service on line no later than 36 months from the start of collections or suspend all collections until the district provides the service and shall refund all collections made during this 36 month period of time.

Ala. Code §11-98-5(a)(1) (1975).

2.   On June 4, 1996, the taxpayers of Choctaw County voted to implement an Enhanced Universal Emergency Number Service ("E-911 Service") and agreed to pay a service charge of $2.00 per telephone line per month in order to fund the establishment of

the E-911 Service.  The local telephone companies began collecting the service charges from the taxpayers in August of 1996.  The District, however, did not begin collecting the service charges until October 25, 1996.

      3.      Once the District began collecting the service charges, it immediately began using the funds to map and address the county, purchase equipment, hire employees and take other steps towards establishing the E-911 Service.  In April of 1997, the District hired Patsy Allen to serve as its Executive Director.  Ms. Allen was responsible for overseeing the establishment of E-911 Service and reporting to the Board concerning the District's progress.

      4.      On September 1, 1998, AAIC issued to the District the insurance policy which is at issue in this litigation, namely Commercial General Liability Policy Number VFIS-CL-0011473-1 ("the Policy").  The Policy was renewed on September 1, 1999.

      5.      During its efforts to implement E-911 Service, the District encountered several problems, including problems with the local telephone companies and third-party vendors which delayed the completion of E-911 Service.  As a result, the District was not able to receive an actual emergency telephone call from the public until March 13, 2000—approximately 40 ½ months after the date it first collected the service charges.

      6.      On or about March 13, 2000, Chalonde Lassiter and Peggy Turner, individually and on behalf of all others similarly situated, filed a class action lawsuit in the Circuit Court of Choctaw County, Alabama against the District and its Board of Directors ("the Board"), styled *Hutchinson, et al v. Choctaw County Communication*

*District, et al*, Civil Action No. CV00-042-C ("the Turner lawsuit"). The Turner plaintiffs alleged that they began paying emergency telephone service charges on August 13, 1996 and continuously thereafter for a period of more than 36 months, during which time the District failed to have the service "on line" as the Statute required. They demanded judgment against the District and the Board "for the full amount of emergency telephone service charges collected from the class members, plus legal interests and costs."

7.      AAIC defended the District and the Board against the Turner lawsuit subject to a reservation of rights.

8.      The District and Board filed a motion for summary judgment in the Turner lawsuit, arguing that the term "on line" as it was used in Ala. Code § 11-98-5(a)(1) was ambiguous and did not require the service to be fully operational within the 36-month period.  The Turner plaintiffs opposed that motion, and filed a cross-motion for partial summary judgment seeking a judgment as a matter of law on the issue of liability.  The trial court denied the plaintiffs' motion and granted summary judgment in favor of the District and the Board, holding that the District had substantially complied with the Statute.  Specifically, the trial court held that, "[t]he District substantially complied with the requirements of the statute through the hiring and training of personnel, the purchasing of equipment, programs and other related necessities, the mapping and readdressing of the county, and contracting with telecommunications companies." Plaintiff's Exh. 4 (Doc. 31-5) at 6.  The trial court also concluded that the interpretation of the term "on line" in the Statute "is subject to varying interpretations."  *Id*.  The Turner

plaintiffs appealed the trial court's ruling to the Alabama Supreme Court which directed the appeal to the Alabama Court of Civil Appeals. The Alabama Court of Civil Appeals reversed the summary judgment entered in favor of the District, holding that because the E-911 Service was not fully operational within the 36-month deadline, the District had not complied with the Statute. *Hutchinson v. Choctaw County Emergency Communication District*, 906 So. 2d 933, 937 (Ala. Civ. App. 2004).

9. On July 8, 2005, AAIC filed a Complaint for Declaratory Judgment in this Court seeking a determination that it did not owe a defense or indemnity to the District in the Turner lawsuit based, in part, upon the following provision in the Policy:

> EMERGENCY SERVICE MANAGEMENT LIABILITY
> POLICY CLAIMS MADE
>
> *   *   *
>
> SECTION I - - COVERAGES
>
> INSURING AGREEMENTS
>
> Coverage A - - Liability for Monetary Damages
>
> 1. We will pay those sums that the insured becomes legally obligated to pay as monetary damages because of a "wrongful act" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may, at our discretion, investigate any such "wrongful act" and settle any "claim" or "suit" that may result.
>
> *   *   *
>
> EXCLUSIONS
>
> This insurance does not apply under either Coverage A or Coverage B to:

> \* \* \*
>
> k. Damages, loss or expense arising out of or contributed to by:
>
> (1) Any fraudulent, dishonest, criminal or malicious act of the insured; or willful violation of any statute, ordinance or regulation committed by or with the knowledge of the insured. However, we will defend the insured for covered civil action subject to the other terms of the policy until either (a) a judgment or final adjudication establishes such an act, or (b) the insured confirms such act.

10. On June 23, 2006, AAIC filed a motion for summary judgment (Doc. 26), arguing that it was entitled to judgment as a matter of law based upon exclusions in the Policy for liability arising from "fines" and "penalties" and for liability arising from the "willful violation" of a statute. AAIC also argued that there is no coverage under the Policy because the underlying action does not seek "monetary damages." Upon consideration of AAIC's motion, the Defendants' briefs in opposition to summary judgment (Doc. 31-33), AAIC's reply (Doc. 34), the Court held that the policy exclusions for claims based on "fines" and "penalties" were inapplicable.[1] The Court further held, however, that a genuine issue of material fact existed concerning whether the District committed a willful violation of the applicable statute. Whether the District willfully violated the applicable statute was the sole issue presented to the Court at trial on November 15, 2006.

---

[1]The Court specifically concluded that the "refund of collections" required under Ala. Code § 11-98-5 and directed by the Alabama Court of Civil Appeals does not constitute a "fine" or a "penalty" but, instead, a mere reimbursement of funds previously collected.

11.	Pursuant to the District's by-laws, the District is governed by the Board which is composed of seven members appointed by the Choctaw County Commission. ®. at Plf.'s Ex. 13).  Only the Board is authorized to conduct business on behalf of the District.  (Id.).

12.	Patsy Allen has been the Executive Director of the District since April of 1997.  She testified that she is not a member of the Board and does not have the authority to make decisions on behalf of the District although she did regularly attend Board meetings during the time that E-911 Service was being established.  ®. at 37, 58-59).

13.	Ms. Allen testified that she and the Board members were aware of the Statute's 36-month deadline as well as the requirement to cease collections and make a refund.  ®. at 63-64; 133).  Ms. Allen testified, however, that neither she nor any member of the Board was concerned about the Statute's refund requirement because they at all times believed the District had complied with the Statute.  ®. at 133).  Ms. Allen explained that the District anticipated that the E-911 System would be completed by May of 1999.  ®. at 76).  The District, however, encountered numerous problems that prevented it from having the system completed by May of 1999.  Specifically, Ms. Allen discussed a four-month delay caused by Motorola's inadvertent shipment of 911 equipment before it had been properly tested; a two-month delay caused by Bellsouth's re-routing of the telephone trunk lines; delays with various telephone companies caused by the threat of Y2K; difficulty getting residents to complete and return addressing forms; and the sudden death of the District's electrician.  ®. at 78; 81-82; 83-84; 66-68).  Ms.

Allen testified that all of the delays were caused by third parties and were due to circumstances beyond the District's control that were not the result of any action or inaction by the District. ®. at 68; 81).  By October 25, 1999, the District had substantially completed the E-911 service. ®. at 132-33).  The District was able to receive telephone calls ®. at 86) and had installed all of the necessary 911 equipment except for the trunk lines which were the responsibility of Bellsouth to install.  ®. at 82-83).   The District was also ready to begin testing, but could not do so due to BellSouth's failure to install the trunk lines.  ®. at 82-83).  Ms. Allen testified that she believed the District did everything it could to comply with the Statute and never believed at any time that the District was in violation of the Statute.  ®. at 62; 132-33).  She also stated that she was not aware of any Board member that believed the District was violating the Statute.  ®. at 62-63).

      14.    Ms. Allen testified that during the time the District was establishing E-911 Service, there were no allegations that the District had misspent money.  ®. at 133).  There are no allegations in the underlying <u>Turner</u> lawsuit that the District intentionally failed to comply with the Statute.  ®. at 134).

      15.    The Statute does not define the term "on line." Ms. Allen acknowledged that she had wrestled with the question of what the term "on line" meant in the Statute. ®. at 85).  She testified that she had no special training, education, or experience with computers or 911 equipment that would give her insight regarding the term "on line."  ®. at 71).  She stated that she made attempts to determine the meaning of "on line" by discussing it with other 911 districts in neighboring counties.  ®. at 86-87).  Ms. Allen

testified that she was aware of other counties who had not completed their 911 systems within 36 months of collecting service charges, but did not cease collections or refund the charges already collected because they were substantially complete. (®. at 87). Ms. Allen stated that she relied upon her discussions with other county 911 districts in forming her opinion that the District had not violated the Statute. (Id.).

16.     Franklin Boney is Vice Chairman of the Board and has been a member of the Board since 1995.  He was designated as the representative authorized to speak on behalf of the Board at trial.  (®. at 153).  Mr. Boney testified that the Board believed the term "on line," as used in the Statute, meant that the District was able to receive phone calls, make phone calls, and was ready for testing.  (®. at 145).  Mr. Boney does not recall any specific discussions among the Board members concerning the decision to "keep going" after the 36-month deadline, but stated that he and the other Board members "figured that we were on-line" as they understood the term in the Statute. (®. at 144). According to Mr. Boney, "we [the Board] all thought we were . . . right on schedule." (®. at 152).   He testified that the Board believed the District was in compliance with the Statute and was never concerned that it was violating the Statute. (®. at 144-45; 147). Like Ms. Allen, Mr. Boney testified that he had no specialized education or training with computers or 911 equipment or special insight concerning the term "on line." (®. at 150). In its everyday sense, he understands the term "on line" to mean "connected to the internet." (®. at 150).

17.     The plaintiffs in the <u>Turner</u> lawsuit allege that the telephone companies began collecting service charges from them on August 13, 1996.  Although it is not clear whether the Board knew when the telephone companies began collecting the service charges ®. at 154),   both Ms. Allen and Mr. Boney testified that the District did not begin collecting service charges until October 25, 1996. ®. at 20-21; 155-56).  Additionally, Mr. Boney testified that he considered October 25, 1996 to be the date for determining when the 36-month deadline began to run because it was not possible for the District to begin efforts to establish E-911 Service until it collected the service charges. ®. at 155-56).  Ms. Allen, likewise, testified that she believed the start of collections for purposes of determining when the 36-month time period began to run is the date the District began collecting the service charges.  ®. at 59).

18.     The undisputed testimony demonstrates that the District believed the 36-month time period began to run on October 25, 1996 when the District first began receiving the service charges.  ®. at 20; 155-56).  There is no evidence to suggest that this conclusion was drawn in bad faith or that it is unreasonable in light of the fact that it was not possible for the District to begin establishing E-911 Service until it began receiving the service charges.  The Court, therefore, concludes that the District believed that the 36-month deadline ended on October 25, 1999.

## CONCLUSIONS OF LAW

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

2.  At the close of AAIC's case, the District argued that it is entitled to a judgment as a matter of law because AAIC failed to meet its burden of demonstrating that the District committed a willful violation of the Statute. Rule 52©) of the Federal Rules of Civil Procedure provides, in pertinent part:

> If during a trial without a jury a party has been fully heard with respect to an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party on any claim. . . that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

In ruling on a motion for judgment pursuant to Rule 52©), the Court may make credibility determinations and findings of fact subject to the "clearly erroneous" standard of appellate review. 9 James Wm. Moore, Moore's Federal Practice ¶ 52.31 (3d ed. 2006); Fed. R. Civ. P. 52©) advisory committee's note.

3.  AAIC contends that the District's failure to cease collections and refund the service charges when it was not taking E-911 calls within 36 months of collecting the service charges constitutes a willful violation of the Statute, and is, therefore, excluded by exclusion k(1) in the Policy. Where, as here, a liability insurer seeks a declaration of relief from the terms of a policy that it issued, it bears the burden of proving its entitlement to relief. *See, State Auto. Mut. Ins. Co. v. McIntyre*, 652 F. Supp. 1177, 1195 (N.D. Ala. 1987). It is well-settled that ambiguities in an insurance policy must be construed liberally and in favor of the insured. *See e.g.*, *Westport Ins. Corp. v. Tuskegee Newspapers, Inc.*, 402 F.3d 1161, 1164 (11th Cir. 2005). Moreover, exclusions or

exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. *Id.*

4. The term "willful violation" is not defined in the Policy, and, thus, must be given its plain and ordinary meaning. *Westport Ins. Corp.*, 402 F.3d at 1165. Black's Law Dictionary provides, "an act or omission is 'willfully' done, if done voluntarily and intentionally and with the specific intent to do something the law forbids." Black's Law Dictionary, 1434 (5th ed. 1979). The Oxford English Dictionary defines "willful" as "intentional [or] deliberate." The Oxford English Dictionary (2d ed. 1989). The Alabama Court of Appeals has explained that "[a] 'willful' act may be described as one done intentionally, knowingly, purposely, without justifiable excuse, as distinguished from an act done carelessly, thoughtlessly, heedlessly, or inadvertently." *Padgett v. State*, 56 So. 2d 116, 117 (Ala. Ct. App. 1952). Significantly, the standard for determining an insured's knowledge and/or intent in violating a statute is a "purely subjective one." *See*, *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1067 (Ala. 2003); *Alabama Farm Bureau Mut. Cas. Ins. Co. v Mitchell*, 373 So. 2d 1129, 1135 (Ala. Civ. App. 1979).

5. AAIC has failed to establish by a preponderance of the evidence that the District committed a willful violation of the Statute. The Board possesses the sole authority to make decisions on behalf of the District. Thus, any intentional or knowing violation of the Statute by the District could only have been made by the Board. AAIC presented the testimony of only one Board member, Franklin Boney. Mr. Boney testified that neither he nor any other member of the Board willfully or intentionally violated the

Statute.  To the contrary, he testified that the Board believed the District had complied with the requirements of the Statute.  Likewise, Patsy Allen testified that she at all times believed the District was in compliance with the Statute and that she was not aware of any Board member that believed the District had violated the Statute.  There has been no evidence presented to demonstrate that the Board believed the District was in violation of the Statute—much less that the Board intended for the District to violate the Statute.

      6.     AAIC's contention that the omission in the Board meeting minutes of any discussion concerning whether to continue collecting the service charges beyond the 36-month deadline somehow demonstrates the District's willfulness or bad faith is unsubstantiated. Mr. Boney testified that the Board never discussed the District's compliance with the refund requirement.  Although Ms. Allen testified that there was some discussion among the Board members concerning the 36-month deadline, she stated that there was never a formal decision or vote that would have been recorded in the minutes.  Both Mr. Boney and Ms. Allen testified that the Board never omitted from the minutes important matters that were discussed in Board meetings.  AAIC's contention is also inconsistent with the testimony that the Board's decision to proceed or "keep going" was, at best, discussed informally and was never voted on by the Board.  Despite AAIC's assertion, the fact that the meeting minutes do not include the Board's discussion, if any, of whether to continue collecting the service charges beyond the 36-month deadline only further demonstrates that the Board was not concerned with violating the Statute because it believed the District had complied with the requirements of the Statute.

7.     It cannot reasonably be argued that the District's belief that it was in compliance with the Statute was unjustified or unreasonable.  Both Ms. Allen and Mr. Boney testified that they struggled with understanding the term "on line" and exactly what was required by the Statute.  Even the trial court in the Turner lawsuit was so persuaded that the District had complied with the Statute that it held, as a matter of law, that the District did not violate the Statute.  Although the Alabama Court of Civil Appeals ultimately disagreed with the trial court's interpretation of the Statute on this matter of first impression, the trial court's decision, at a minimum, virtually negates any finding that the District willfully violated the Statute.

8.     Moreover, it can hardly be said that the District's violation of the Statute was without justifiable excuse.  The undisputed testimony of Ms. Allen and Mr. Boney establishes that the District's failure to have completed E-911 service by October 25, 1999 was due to delays by Motorola, Bellsouth, and other third parties all of whom were outside of the District's control.  Further, the final completion of the substantially complete E-911 system by the District resulted in the District being able to provide a valuable public service to the citizens of Choctaw County.

9.     In summary, AAIC has presented no evidence to demonstrate that, using a subjective standard, the District willfully (e.g., "knowingly" or "intentionally" or "without justifiable excuse") violated the Statute.  *See, Tanner*, 874 So. 2d at 1067; *Padgett*, 56 So. 2d at 117.

**CONCLUSION AND ORDER**

For the reasons stated above, the Court concludes that AAIC has not proven by a preponderance of evidence that the District committed a willful violation of the Statute. Accordingly, AAIC has failed to demonstrate that it is entitled to a declaratory judgment that it is not obligated to defend and indemnify the District against the plaintiffs' claims in the underlying class action.  It is, therefore, **ORDERED** that pursuant to Rule 52©) of the Federal Rules of Civil Procedure, judgment be entered in favor of the defendants, Choctaw County E-911 Communication District, Peggy Turner and Joseph W. Hutchinson, Jr., and against AAIC and thus in favor of insurance coverage for the Defendants in connections with those claims.  Costs are taxed against AAIC.

**DONE** this 26th day of February, 2007.

                                                       s/ W. B. Hand  
                                          SENIOR DISTRICT JUDGE